**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DAVID BUI, *et al.*, derivatively on behalf of COOPER TIRE & RUBBER COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 1:14-cv-01272-RGA ) |
| ROY V. ARMES, *et al.*, | ) ) |
| Defendants, | ) ) |
| and | ) ) |
| COOPER TIRE & RUBBER COMPANY, | ) ) |
| Nominal Defendant. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO STAY PROCEEDINGS OR,
<u>IN THE ALTERNATIVE, TO DISMISS THE CONSOLIDATED COMPLAINT</u>**

OF COUNSEL:

Geoffrey J. Ritts
Adrienne Ferraro Mueller
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel:  (216) 586-3939

Marjorie P. Duffy
JONES DAY
325 John H. McConnell Blvd., Suite 600
P.O. Box 165017
Columbus, Ohio 43216-5017
Tel:  (614) 469-3939

POTTER ANDERSON & CORROON LLP
    Stephen C. Norman (Del. Bar No. 2686)
    John A. Sensing (Del. Bar No. 5232)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P.O. Box 951
    Wilmington, Delaware 19899-0951
    Tel:  (302) 984-6178

*Attorneys for Defendants Roy V. Armes,*
*Bradley Hughes, Thomas P. Capo, Steven M.*
*Chapman, John J. Holland, John F. Meier,*
*Cynthia A. Niekamp, John H. Shuey,*
*Richard L. Wambold, and Robert D. Welding*

PEPPER HAMILTON LLP
    M. Duncan Grant (Del. Bar No. 2994)
    James H.S. Levine (Del. Bar No. 5355)
    Hercules Plaza, Suite 5100
    1313 North Market Street
    P.O. Box 1709
    Wilmington, Delaware 19899-1709
    Tel:  (302) 777-6500

*Attorneys for Nominal Defendant Cooper Tire*
*& Rubber Company*

Dated:  October 8, 2014

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

SUMMARY OF THE ARGUMENT ......................................................................................... 2

STATEMENT OF FACTS ......................................................................................................... 2

    A.    Cooper Tire & Rubber Company And Its Board Of Directors ............................. 2

    B.    The Proposed Transaction With Apollo ............................................................... 3

ARGUMENT .............................................................................................................................. 7

I.    THIS ACTION SHOULD BE STAYED BECAUSE IT TURNS ON THE
OUTCOME OF THE FIRST-FILED, PARALLEL SECURITIES ACTION ................. 7

II.    THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED
TO MAKE A PRE-SUIT DEMAND ON THE BOARD .................................................. 9

    A.    The Complaint Impermissibly Lumps All The Defendants Together ................. 11

    B.    The Complaint Does Not Challenge The Independence Of A Majority Of
The Board ........................................................................................................... 12

    C.    The Complaint Fails To Establish That A Majority Of The Board Is
"Interested" ........................................................................................................ 13

        1.    Conclusory Allegations Of Wrongdoing Do Not Demonstrate
Demand Futility ...................................................................................... 15

        2.    The Disclosure-Related Allegations Do Not Demonstrate Demand
Futility .................................................................................................... 16

    D.    Other Boilerplate Allegations Do Not Establish Demand Futility ..................... 19

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arnold v. Soc'y for Sav. Bancorp, Inc.*,
　　650 A.2d 1270 (Del. 1994) ................................................................................................16

*Aronson v. Lewis*,
　　473 A.2d 805 (Del. 1984),
　　*overruled in part on other grounds by Brehm v. Eisner*,
　　746 A.2d 244 (Del. 2000) ..............................................................................9, 10, 11, 13, 14

*Bechtel Corp. v. Local 215, Laborers' Int'l Union*,
　　544 F.2d 1207 (3d Cir. 1976).........................................................................................7, 8

*Brehm v. Eisner*,
　　746 A.2d 244 (Del. 2000) ...............................................................................................9, 12

*Brenner v. Albrecht*,
　　No. 6514-VCP, 2012 Del. Ch. LEXIS 20 (Del. Ch. Jan. 27, 2012) ..........................................8

*Britton v. Parker*,
　　No. 06-cv-01797, 2009 U.S. Dist. LEXIS 87829 (D. Colo. Sept. 23, 2009).........................17

*Brudno v. Wise*,
　　No. 19953, 2003 Del. Ch. LEXIS 35 (Del. Ch. Apr. 1, 2003)..............................................7, 8

*Gen. Elec. Co. v. Cathcart*,
　　980 F.2d 927 (3d Cir. 1992)...............................................................................................16

*Grobow v. Perot*,
　　539 A.2d 180 (Del. 1988),
　　*overruled in part on other grounds by Brehm v. Eisner*,
　　746 A.2d 244 (Del. 2000) ................................................................................................20

*Guttman v. Huang*,
　　823 A.2d 492 (Del. Ch. 2003)..................................................................................10, 14, 15

*Heil v. LeBow*,
　　No. 91 Civ. 8656, 1993 U.S. Dist. LEXIS 222 (S.D.N.Y. Jan. 13, 1993)..............................17

**Page(s)**

*In re Caremark Int'l, Inc. Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996)....................................................................................11

*In re Caterpillar Inc. Deriv. Litig.*,
    No. 12-1076-LPS-CJB, 2014 U.S. Dist. LEXIS 78680 (D. Del. June 10, 2014) .....................3

*In re Citigroup Inc. S'holder Deriv. Litig.*,
    964 A.2d 106 (Del. Ch. 2009)...........................................................................11, 12, 16

*In re Dow Chem. Co. Deriv. Litig.*,
    No. 4349-CC, 2010 Del. Ch. LEXIS 2 (Del. Ch. Jan. 11, 2010)......................................11, 15

*In re First Solar Deriv. Litig.*,
    No. CV-12-00769, 2012 U.S. Dist. LEXIS 178523 (D. Ariz. Dec. 17, 2012) .........................9

*In re Intel Corp. Deriv. Litig.*,
    621 F. Supp. 2d 165 (D. Del. 2009) ..............................................................................20

*In re Lear Corp. S'holder Litig.*,
    967 A.2d 640 (Del. Ch. 2008)......................................................................................14

*In re Massey Energy Co. Deriv. & Class Action Litig.*,
    No. 5430-VCS, 2011 Del. Ch. LEXIS 83 (Del. Ch. May 31, 2011) .........................................8

*In re McKesson HBOC, Inc. Secs. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..........................................................................19

*In re Reliance Sec. Litig.*,
    135 F. Supp. 2d 480 (D. Del. 2001)................................................................................16

*In re Vitalink Commc'ns Corp. S'holders Litig.*,
    No. 12085, 1991 Del. Ch. LEXIS 195 (Del. Ch. Nov. 8, 1991),
    *aff'd sub nom. Grimes v. John P. McCarthy Profit Sharing Plan*,
    610 A.2d 725 (Del. 1992) ............................................................................................19

*In re Wayport, Inc. Litig.*,
    76 A.3d 296 (Del. Ch. 2013).........................................................................................17

*Kanter v. Barella*,
    489 F.3d 170 (3d Cir. 2007)...........................................................................................9

**Page(s)**

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936) ...................................................................................................7

*Loudon v. Archer-Daniels-Midland Co.*,
    700 A.2d 135 (Del. 1997) .........................................................................................17

*McPadden v. Sidhu*,
    964 A.2d 1262 (Del. Ch. 2008)................................................................................13

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970).................................................................................................16

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)....................................................................................18

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002).....................................................................................12

*Postorivo v. AG Paintball Holdings, Inc.*,
    Nos. 2991-VCP, 3111-VCP, 2008 Del. Ch. LEXIS 29 (Del. Ch. Feb. 29,2008) ...................12

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ...........................................................................10, 11, 14

*Rattner v. Bidzos*,
    No. 19700, 2003 Del. Ch. LEXIS 103 (Del. Ch. Oct. 7, 2003) ...................10, 11, 15

*Raul v. Rynd*,
    929 F. Supp. 2d 333 (D. Del. 2013).................................................................10, 12

*Rediker v. Geon Indus., Inc.*,
    464 F. Supp. 73 (S.D.N.Y. 1978) ......................................................................16, 17

*Richardson v. Graves*,
    No. 6617, 1983 Del. Ch. LEXIS 466, at *9 (Del. Ch. June 17, 1983) ....................20

*Rosenblatt v. Getty Oil Co.*,
    493 A.2d 929 (Del. 1985) .......................................................................................19

*Skeen v. Jo-Ann Stores, Inc.*,
    750 A.2d 1170 (Del. 2000) ......................................................................................19

**Page(s)**

*South v. Baker*,
  62 A.3d 1 (Del. Ch. 2012)....................................................................................8, 20

*Stone v. Ritter*,
  911 A.2d 362 (Del. 2006) ......................................................................................13

*Swanson v. Weil*,
  No. 11-cv-02142, 2012 U.S. Dist. LEXIS 138182 (D. Colo. Sept. 26, 2012)........19

*Taylor v. Kissner*,
  893 F. Supp. 2d 659 (D. Del. 2012)...........................................................10, 11, 14

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976)...............................................................................................19

*Va. Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991).............................................................................................17

*White v. Panic*,
  783 A.2d 543 (Del. 2001) ....................................................................................9, 10

**RULES AND STATUTES**

Fed R. Civ. P. 23.1..................................................................................9, 11, 16, 20

8 *Del. C.* § 102(b)(7)...........................................................................................13, 14, 15

15 U.S.C § 78n(a) ..............................................................................................17, 18, 19

28 U.S.C. § 1404(a) ....................................................................................................1

**OTHER AUTHORITIES**

Alexandra Ho & Siddharth Philip, *Apollo Sees Cooper Acquisition on Track Amid
  China Labor Strike*, Bloomberg (Aug. 13, 2013) ......................................................5

Siddharth Philip & Karthikeyan Sundaram, *Apollo Tyres Slumps After Deal to
  Acquire Cooper Tire*, Bloomberg (June 13, 2013) ..................................................3

Rose Yu & James T. Areddy, *Indian Deal for Cooper Tire Riles Chinese
  Workers*, Wall. St. J. (July 31, 2013) ......................................................................4

## **NATURE AND STAGE OF THE PROCEEDINGS**

This is a tag-along stockholder derivative action that focuses on an abortive merger transaction in 2013 between Cooper Tire & Rubber Company ("Cooper Tire") and affiliates of Apollo Tyres Ltd. ("Apollo").  Plaintiffs contend that the board of directors of Cooper Tire breached their fiduciary duties and violated securities laws in connection with that now-terminated merger (the "Proposed Transaction").

Before plaintiffs here sued, another Cooper Tire stockholder filed a securities class action suit in this Court, alleging violations of the federal securities laws relating to the Proposed Transaction.  *OFI Risk Arbitrages, et al. v. Cooper Tire & Rubber Co., et al.*, No. 14-cv-00068-RGA (D. Del. filed Jan. 17, 2014)) ["OFI"].  After the *OFI* complaint was filed, these purported stockholders filed derivative actions in federal court in Ohio, alleging breaches of fiduciary duty and violation of federal securities laws relating to the same matters underlying the *OFI* action.[1] In the meantime, another Cooper Tire stockholder made a demand on the Company's board, demanding that the board cause the Company to bring the same claims asserted here.

In light of *OFI* and another derivative action,[2] defendants moved to transfer this case to this Court under 28 U.S.C. § 1404(a).  On October 6, 2014, the Ohio court granted the motion, and denied as moot the then-pending motion to stay proceedings or to dismiss the complaint "without prejudice to defendants' right to seek that relief in the District of Delaware."  (D.I. 26 at 2.)

---

[1] *Bui v. Armes, et al.*, No. 3:14-cv-00428-JGC (N.D. Ohio filed Feb. 24, 2014); *Zwang v. Armes, et al.*, No. 3:14-cv-00511-JGC (N.D. Ohio filed Mar. 6, 2014).  Those actions were consolidated. (D.I. 14.)

[2] *Fitzgerald v. Armes, et al.*, No. 14-cv-00479-RGA (D. Del. filed Apr. 17, 2014).  Defendants' motion to stay proceedings or dismiss the complaint in that fundamentally identical action is pending decision by the Court.

## SUMMARY OF THE ARGUMENT

1.      This tag-along derivative action should be stayed in favor of *OFI*, the first-filed, parallel securities action upon which this case is predicated.  The claims here are based on the same alleged misconduct as *OFI*, and plaintiffs seek to recover damages based on asserted liability there.  But if Cooper Tire and the other defendants prevail in the securities action, this action would be rendered a nullity.  Because the outcome of the securities case will effectively dispose of this action, and Cooper Tire would be prejudiced if the actions proceed simultaneously, this action should be stayed.

2.      If this action is not stayed, the Complaint should be dismissed because of plaintiffs' unexcused failure to make a pre-suit demand on Cooper Tire's board of directors.  Under Delaware law, the board of directors has sole authority to manage a corporation's legal affairs.  If a stockholder believes the Company has a legal claim, he must present it to the board and demand that the board prosecute it.  These plaintiffs did not comply with that basic prerequisite to a derivative suit, and their attempts to circumvent it must be rejected.  Because this Complaint does not plead particularized factual allegations showing that a majority of Cooper Tire's overwhelmingly independent board could not exercise its business judgment to review a demand, plaintiffs' failure to make a demand was not excused, and the Complaint must be dismissed.

## STATEMENT OF FACTS

### A.      Cooper Tire & Rubber Company And Its Board Of Directors

Cooper Tire, the nominal defendant for whose supposed benefit plaintiffs are suing, is a Delaware corporation headquartered in Ohio.  (¶ 28.)[3]  Based on sales, Cooper Tire is the fourth

---

[3] Paragraph references are to the Verified Consolidated Shareholder Derivative Complaint, D.I.

largest tire manufacturer in North America and the eleventh largest in the world. (¶ 3.) Its international presence spans from the United Kingdom to Serbia to China, where the Company has two operations, one of which is Cooper Chengshan Tire Company, Ltd. ("CCT"), a joint venture of Cooper Tire and Chengshan Group. (¶ 4.) The Complaint alleges that CCT was one reason Apollo pursued the deal, as it provided Apollo entry to China's tire market. (¶¶ 6-7, 50-51.) The Complaint alleges that "Cooper executives" knew that Chengshan opposed the Proposed Transaction, because Chengshan itself had tried to buy Cooper Tire. (¶¶ 55, 58.)

The individual defendants are or were officers or directors of the Company. (¶¶ 29-38.) The board had nine members when this action was filed, only one of whom, defendant Armes, was a Cooper Tire employee; he is the Company's CEO. (¶ 29.) The other eight were independent, outside directors. (Ex. A, 3/26/13 DEF 14A at 4-7.)[4]

## B.    The Proposed Transaction With Apollo

The Proposed Transaction, with its $35 per-share price (a 40% premium) was announced on June 12, 2013. (Ex. B, 8/30/13 DEFA 14A at 34 ["Proxy"]; ¶¶ 7-8.) As far as Cooper Tire was concerned, the market responded favorably to the news of the deal. (¶ 8.)[5]

As to Apollo, however, the reaction was decidedly negative. Reflecting analysts' concerns that Apollo would take on too much debt in the deal, the size of which was more than three times Apollo's market value, Apollo's stock plunged.[6]

---

16. We accept its well-pleaded allegations as true solely for purposes of this motion.

[4] On this motion, the Court may consider documents filed with the SEC or referred to in the Complaint, publicly available stock prices, and other matters of public record. *In re Caterpillar Inc. Deriv. Litig.*, No. 12-1076-LPS-CJB, 2014 U.S. Dist. LEXIS 78680, at *3 n.2 (D. Del. June 10, 2014). Documents properly considered on this motion are filed as exhibits.

[5] Cooper Tire's stock closed at $24.56 on June 11, 2013 (the day before the deal was announced), and closed at $34.66 on June 12, 2013.

[6] Siddharth Philip & Karthikeyan Sundaram, *Apollo Tyres Slumps After Deal to Acquire Cooper*

The reaction at CCT also was negative.  As a result of the announcement of the Proposed Transaction, CCT workers went on strike on June 21, 2013.  (¶ 59; Proxy at 62.)  They returned to work on June 28, but without producing Cooper Tire-branded tires, and then they resumed their strike on July 13.  (¶ 59; Proxy at 62.)  The CCT union again returned to work on August 17, 2013, but barred Cooper Tire's representatives from the facility, and denied the Company access to certain of CCT's books and records.  (¶ 59; Proxy at 62.)  The labor strife at CCT was a matter of wide public notice, with the CCT union going so far as to take out a full-page advertisement in the Wall Street Journal protesting the deal.[7]

The merger agreement between Cooper Tire and Apollo specifically addressed the potential for a negative reaction by the Company's labor forces.  In the definition of a "Material Adverse Effect," the parties contractually agreed that Apollo would be required to close the deal, even upon the occurrence of events, changes, or effects attributable to (among other things) the execution of the merger agreement or the announcement of the Proposed Transaction, "including the impact thereof on the relationships, contractual or otherwise, of the Company or any of its Subsidiaries with employees, [or] labor unions . . . . "  (Proxy at A-57.)

In the Proxy filed with the SEC on August 30, 2013, Cooper Tire disclosed the CCT labor matters and the Company's continued efforts to "work toward resolving these issues and returning the facility to full, normal operation again as soon as possible."  (*Id.* at 62.)  Cautioning that "[w]e cannot assure you that any of our expectations . . . will be achieved" (*id.* at 13), Cooper Tire stated that "[n]either the strike nor the plant slowdown are expected to have an effect on the consummation of the merger" (¶ 60 (quoting Proxy at 62)).

---

*Tire*, Bloomberg (June 13, 2013) (Apollo stock fell 25%; "biggest drop since Jan. 1991").

[7] Ex. C, 7/12/13 Wall St. J. advertisement.  *See also* Rose Yu & James T. Areddy, *Indian Deal for Cooper Tire Riles Chinese Workers*, Wall. St. J. (July 31, 2013).

Apollo's public statements reflected the same belief. *See, e.g.*, Alexandra Ho & Siddharth Philip, *Apollo Sees Cooper Acquisition on Track Amid China Labor Strike*, Bloomberg (Aug. 13, 2013) ("We are on track to close the deal in a timely manner and will deal with this and other issues as a matter of course.") (quoting Apollo's CFO). During this time, the market reflected these uncertainties; Cooper Tire's stock traded well below the $35 per-share deal price.[8]

The Proxy also disclosed a set of financial projections that had been given to Apollo, other potential purchasers, and Cooper Tire's financial advisor before the deal was announced on June 12, as well as another set of projections—the "sensitivity" case—that Cooper Tire's investment banker used for a fairness opinion provided to the Company's board on June 11, 2013. (¶ 65; Proxy at 45.) Plaintiffs do not disagree that the projections were disclosed, and disclosed accurately, in the Proxy. (*See* ¶ 65.) Cooper Tire cautioned its investors about the inherent unreliability of the projections, which were based on "assumptions that may now be outdated" and were not "necessarily predictive of actual future events" as "actual results may be materially . . . less than those contained in the projections." (Proxy at 44.) In particular, the Proxy explained that the non-sensitivity case projections were based on an "aspirational" five-year operating plan that was not adjusted for expected market conditions. (*Id.*) The Company also made clear that it did "not intend to update these outdated financial projections." (*Id.*)

After the Proposed Transaction was announced on June 12, 2013, the Complaint alleges that additional projections were prepared in July, August, and September (the "Post-Signing Projections"). (¶¶ 64, 66-69.) The Post-Signing Projections forecast lower revenue and operating profit for 2013, compared to the projections prepared before the Proposed Transaction was announced. (*Id.*) According to the Complaint, the Proxy was false and misleading because

---

[8] Cooper Tire's stock closed at $31.93 on August 30, 2013.

it did not include the Post-Signing Projections.  (*E.g.*, ¶ 67.)

In addition to the CCT labor issues, the announcement of the deal triggered domestic labor issues.  Unlike the current Complaint, which now focuses on the CCT strike, the original complaints acknowledged the important impact of the domestic labor issues.  On August 1, 2013, the United Steelworkers ("USW") union filed grievances alleging that the Proposed Transaction violated collective bargaining agreements between the Company and the union locals at its two largest U.S. plants.  (Proxy at 61; *Bui* Compl., D.I. 1, ¶ 11; Ex. D, *Zwang* Compl. ¶ 8.)  In mid-September, an arbitrator barred the Company from selling or transferring the plants "unless and until the [USW] has entered into agreements with" Apollo.  (*Bui* Compl., D.I. 1, ¶ 11; Ex. D, *Zwang* Compl. ¶ 8.)  Cooper Tire promptly disclosed that development.  (Ex. E, 9/19/13 8-K.)

On September 30, 2013, Cooper Tire's stockholders voted overwhelmingly in favor of the deal.  (*See* ¶ 69.)  Meanwhile, Apollo had negotiated with the USW, but offered no proposal that was not contingent on a reduction of the $35-per-share merger price.  As a result, Apollo failed to reach an agreement with the USW despite contractual provisions requiring it to make "reasonable best efforts" to do so.  Cooper Tire therefore sued Apollo in the Delaware Court of Chancery on October 4, 2013, for breaching the merger agreement.  On November 8, 2013, the Court of Chancery denied Cooper Tire's request for an order of specific performance requiring Apollo to close the deal immediately.  (¶ 73.)  In mid-December, after Cooper Tire informed the Delaware Supreme Court that specific performance was likely no longer practical, the court dismissed as improvidently granted Cooper Tire's interlocutory appeal of the specific performance ruling.  (¶ 77.)  On December 30, Cooper Tire announced that it was terminating the Proposed Transaction.  (¶ 78.)  Its damages claims against Apollo remain pending.

Cooper Tire's stock closed on October 7, 2014 at $29.31, 19% higher than before the deal was announced.  Despite the distractions from the abortive deal, the Company still earned the

second-highest operating profit in its 100-year history in 2013.  (Ex. F, 3/14/14 8-K, Ex. 99.1.)

## ARGUMENT

This tag-along action should be stayed in light of the securities action upon which it is predicated.  If not stayed, this case must be dismissed.  When a derivative plaintiff seeks to show that a pre-suit demand would have been futile, he must plead *particularized* facts demonstrating futility.  But these plaintiffs have not done so, and so they cannot sue on Cooper Tire's behalf.

## I.    THIS ACTION SHOULD BE STAYED BECAUSE IT TURNS ON THE OUTCOME OF THE FIRST-FILED, PARALLEL SECURITIES ACTION.

The Court should stay this tag-along derivative action in light of *OFI*, because the alleged damages here largely flow from that related securities action.[9]  As the Complaint acknowledges, the same alleged facts here underlie the parallel *OFI* action.  (¶ 75.)  In fact, the Complaint cites Cooper Tire's purported exposure to liability in *OFI* as the harm caused to the Company by the individual defendants' supposed breaches of fiduciary duty.  (¶ 82(a) (seeking recovery of "costs incurred from defending and paying any settlement in [*OFI*]").)

This Court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).

Courts regularly stay a derivative action that "largely turns on the outcome" of another action.  *See, e.g.*, *Brudno v. Wise*, No. 19953, 2003 Del. Ch. LEXIS 35, at *12, 14 (Del. Ch. Apr. 1, 2003) (staying tag-along derivative action predicated on a parallel federal securities law action and regulatory investigation).  *See also Bechtel*, 544 F.2d at 1215 (affirming stay; in "its sound

---

[9] To the extent the Complaint's vague allegations seek recovery for "potential[]" costs of the litigation with Apollo in the Court of Chancery (¶ 123), that counsels further in favor of a stay; the outcome of that case is presently unknowable, as it is still pending.

discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues"). This Court should do the same.

To begin with, if Cooper Tire and the other defendants were to prevail in the securities action, "it is not apparent what, if anything, would be left of this Action." *Brudno*, 2003 Del. Ch. LEXIS 35, at *12. Furthermore, "because this Action largely seeks to hold the director-defendants liable for any harm coming to [Cooper Tire] on account of [the *OFI* case] . . . this case cannot rationally proceed to trial in advance of [*OFI*]." *Id.* A stay therefore is appropriate because "this case is, in reality, a claim primarily for indemnification," and so the outcome of *OFI* will be "crucial to the final determination of this case as pled." *Id.*[10]

Moreover, absent a stay (or dismissal for lack of a pre-suit demand), this derivative action and *OFI* would be litigated simultaneously, which "creates a significant risk that prosecution of [the derivative plaintiffs'] case will prejudice [the Company]" in its defense of the securities action. *Brenner*, 2012 Del. Ch. LEXIS 20, at *19 (staying tag-along derivative action). That is so because "[p]rosecution of [a] derivative action would involve taking actions designed to refute the merits of the Company's defense of the Securities Class Action, and vice versa." *Id.* at *18.

In this derivative case, plaintiffs will seek to establish the liability of Cooper Tire's officers and directors for the same alleged misstatements as in the parallel securities case.

---

[10] *See also Brenner v. Albrecht*, No. 6514-VCP, 2012 Del. Ch. LEXIS 20, at *2 (Del. Ch. Jan. 27, 2012) (granting stay; "the plaintiff seeks indemnification for whatever losses the Company ultimately incurs from the Securities Class Action and recovery of other damages directly caused by the restatement itself"); *South v. Baker*, 62 A.3d 1, 23-24 (Del. Ch. 2012) ("This Court routinely stays *Caremark* claims that seek to shift losses from the corporation to the defendant fiduciaries."); *In re Massey Energy Co. Deriv. & Class Action Litig.*, No. 5430-VCS, 2011 Del. Ch. LEXIS 83, at *104 (Del. Ch. May 31, 2011) ("plaintiffs, as fiduciaries for other Massey stockholders, [should] be reluctant to prosecute the Derivative Claims they claim are so valuable until the direct claims against Massey are resolved . . . Thus, the Derivative Claims should follow, rather than precede, the resolution of the key direct suits and regulatory proceedings.").

Because the securities plaintiffs are seeking to hold Cooper Tire liable for those same alleged misstatements, plaintiffs' efforts here would tend to undermine Cooper Tire's defense of the securities action.  That warrants entry of a stay.  *See, e.g.*, *In re First Solar Deriv. Litig.*, No. CV-12-00769, 2012 U.S. Dist. LEXIS 178523, at *6 (D. Ariz. Dec. 17, 2012) ("Defendant will face the practical difficulty of pursuing potentially divergent strategies if the two actions are litigated simultaneously.") (granting stay).

## II.   THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO MAKE A PRE-SUIT DEMAND ON THE BOARD.

If it is not stayed, this action should be dismissed.  Plaintiffs did not make a demand before running to court, and they have failed to allege particularized facts excusing that failure, as required by Rule 23.1.  Pleading demand futility under Rule 23.1 is a "notable exception[] to notice pleading."  *Kanter v. Barella*, 489 F.3d 170, 175-76 (3d Cir. 2007).

"A cardinal precept of [Delaware corporate law] is that directors, rather than shareholders, manage the business and affairs of the corporation."  *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).[11]  As part of those powers, "the board of directors has sole authority to initiate or to refrain from initiating legal actions asserting rights held by the corporation."  *White v. Panic*, 783 A.2d 543, 550 (Del. 2001).  A stockholder who wants the corporation to pursue a lawsuit therefore must make a demand on the board to have the corporation bring the suit, leaving the decision in the hands of the board.  *E.g.*, *Aronson*, 473 A.2d at 811-12.  "This demand requirement allows the corporate machinery to self-correct problems and to safeguard against frivolous lawsuits."  *Raul v. Rynd*, 929 F. Supp. 2d 333, 340 (D. Del. 2013) (Stark, J.).

---

[11] The adequacy of the demand required by Rule 23.1 is determined under the law of Delaware, Cooper Tire's state of incorporation.  *See Kanter*, 489 F.3d at 176.

There is a "limited exception" to the demand requirement. *White*, 783 A.2d at 550. A stockholder may proceed without making a demand—and thereby "impinge[] on the managerial freedom of directors," *Aronson*, 473 A.2d at 811—only if the complaint alleges with particularity that "a demand would be a futile gesture and is therefore excused," *White*, 783 A.2d at 550.

Where, as here, a complaint does not challenge "any particular business decision made by the . . . board as a whole," the so-called *Rales* test applies to determine whether the plaintiff's failure to make a pre-suit demand is excused. *Guttman v. Huang*, 823 A.2d 492, 499 (Del. Ch. 2003).[12] Under *Rales*, demand is excused only if the complaint's "particularized factual allegations . . . create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

This Complaint's assertion that the board "approved" the Proxy should be analyzed under the *Rales* test because that contention does not challenge any particular business decision made by the board. Instead, at its core, it is an argument that the board has "fail[ed] to oversee subordinates," that is, those Company employees who actually prepared the Proxy. *See id.* at 934 n.9. *See also Rattner*, 2003 Del. Ch. LEXIS 103, at *27-30 (applying *Rales* to allegations that board's oversight failure allowed company to disseminate misleading financial disclosures); *Taylor v. Kissner*, 893 F. Supp. 2d 659, 669-73 (D. Del. 2012) (Andrews, J.) (applying *Rales* to allegations that board "allowed" company to maintain faulty internal controls and to file misleading financial disclosures). Likewise, allegations that the board "allowed the Company"

---

[12] *See also Rattner v. Bidzos*, No. 19700, 2003 Del. Ch. LEXIS 103, at *26 (Del. Ch. Oct. 7, 2003) ("Because there has been no action or decision by a board of directors, . . . the application of the business judgment rule is lacking, and accordingly it is under the *Rales* test that the fundamental right of boards of directors to manage the affairs of corporations is recognized.").

to breach the merger agreement are explicitly based on the board's supposed failure to "conduct proper supervision" (¶¶ 89, 123) and therefore also are properly analyzed under *Rales*.[13]

Allegations of that sort attempt to plead an oversight claim, which is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)). "[A] showing of bad faith is a necessary condition to director oversight liability." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 123 (Del. Ch. 2009). Therefore, the essential inquiry here is whether plaintiffs have made particularized factual allegations establishing that a majority of the directors face a "*substantial likelihood*" of personal liability for bad-faith conduct, and therefore are not disinterested. *See, e.g.*, *Rattner*, 2003 Del. Ch. LEXIS 103, at *29-30. They have not done so.

### A.      The Complaint Impermissibly Lumps All The Defendants Together.

The Complaint does not satisfy Rule 23.1's heightened pleading standard. It contends that demand was excused because an undifferentiated group of "Individual Defendants" (a group that includes a non-director who is irrelevant for the demand inquiry) "approved" the supposedly misleading Proxy. (¶ 89. *See also* ¶ 90.) But that pleading tactic—lumping together all the

---

[13] Under Delaware law, another test (the so-called *Aronson* test) applies where a complaint challenges an affirmative decision of the board, such as approving a merger (which this Complaint does not do) or executive compensation awards. Nothing in this Complaint, however, ties its allegations to any specific, affirmative decision of the board. It says nothing about the supposed "approval" process for the Proxy, such as when the "approval" occurred, whether the board met to review the document, when those meetings occurred, the length of the meetings, the information provided to the board at the meetings, and what if any guidance the board received.

At its core, the Complaint alleges a failure of oversight by the board, for allegedly failing to ensure that the Company's public disclosures did not contain supposedly misleading representations or omissions. That is a claim "based on a failure to supervise, and thus [is] governed by the *Rales* standard." *In re Dow Chem. Co. Deriv. Litig.*, No. 4349-CC, 2010 Del. Ch. LEXIS 2, at *21-22 (Del. Ch. Jan. 11, 2010). *See also Taylor*, 893 F. Supp. 2d at 669 ("Because [plaintiff] is not challenging a specific transaction, but alleging that Defendants failed to oversee the company's accounting system, the *Rales* test applies.").

directors and officers and failing to differentiate among them—does not come "close to the fact-intensive, director-by-director analysis required to meet the pleading standard for demand futility." *Postorivo v. AG Paintball Holdings, Inc.*, No. 2991-VCP, 2008 Del. Ch. LEXIS 29, at *19 (Del. Ch. Feb. 29, 2008) (dismissing derivative complaint). *See also Raul*, 929 F. Supp. 2d at 346 (dismissing complaint that "failed to engage in a director-by-director analysis").

To avoid dismissal, a derivative plaintiff must allege particularized facts "as to the interest and lack of independence of the individual members of that board." *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002). But the Complaint makes no effort to allege futility on a director-by-director basis.[14] Instead, it speculates about what the "Individual Defendants" collectively knew (¶¶ 9-11, 14, 23, 62) or did or failed to do (¶¶ 1, 16, 18, 19, 58, 60, 62, 63, 67, 72). Only allegations meeting "stringent requirements of factual particularity" can raise the requisite doubt about individual directors' impartiality. *Brehm*, 746 A.2d at 254. This Complaint does not come close.

### B.   The Complaint Does Not Challenge The Independence Of A Majority Of The Board.

The Complaint fails to show that demand is excused for lack of independence by a majority of the board. Indeed, it does not try. "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816. But the Complaint never alleges any such outside influences for a majority of the board. It merely point outs that one director (of

---

[14] The only allegations that do not apply generically to the "Individual Defendants" or the "Director Defendants" are those that relate to Mr. Armes. But allegations about him cannot establish demand futility; plaintiffs must demonstrate demand futility as to at least five directors. *See Citigroup*, 964 A.2d at 121 n.36 ("even if the allegations in the Complaint [were] sufficient to excuse demand as to [Mr. Armes], plaintiffs have still failed to properly plead demand futility for a majority of the director defendants").

nine) is a member of management.  (¶ 29.)  But it does not claim that any of the other eight directors were under his control.  Plaintiffs thus effectively concede the independence of the overwhelming majority of the board.

### C.   The Complaint Fails To Establish That A Majority Of The Board Is "Interested."

Plaintiffs contend that the directors will be personally liable to the Company for the claims in the Complaint and, because of that financial "interest," they could not properly consider a demand.  (¶¶ 89, 90.)  But plaintiffs' burden of showing that at least five directors (a majority of the nine-member board) are "interested" is a heavy one, and they do not carry it.

To begin with, the Company's certificate of incorporation includes a provision authorized by Delaware law that shields Cooper Tire's directors from monetary liability to the Company for anything other than disloyal or bad-faith conduct.  *See* 8 *Del. C.* § 102(b)(7).[15]  That means plaintiffs cannot establish demand futility by showing that a director was merely—or even grossly—negligent, because negligence presents no likelihood of personal liability, and thus no disqualifying "interest."  *See, e.g.*, *McPadden v. Sidhu*, 964 A.2d 1262, 1273-74 (Del. Ch. 2008) ("Gross negligence, in contrast [to bad-faith conduct], is exculpated because such conduct breaches the duty of care.") (dismissing claims against directors).[16]

Instead, because the overwhelming majority of the board is independent (as plaintiffs concede) and lacked any financial motive to injure the Company or its stockholders (plaintiffs do not contend otherwise), the Complaint must (but does not) allege facts showing that a majority of

---

[15] Ex. G, 5/5/10 10-Q, Ex. 3(i) at 4 (limiting a director's liability for breach of fiduciary duty "to the fullest extent permitted by Delaware law.").

[16] *See also Stone v. Ritter*, 911 A.2d 362, 367 (Del. 2006) ("[c]ritical to this demand excused argument is the fact that the directors' potential personal liability depends upon whether or not their conduct can be exculpated by the section 102(b)(7) provision").

the directors acted in bad faith.  *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 (Del. Ch. 2008).  *See also Taylor*, 893 F. Supp. 2d at 669 (due to § 102(b)(7) provision, allegations of scienter are required).   There is not a single specific factual allegation in the Complaint that would permit the Court to conclude that any director (let alone five or more) ever set out to harm Cooper Tire or otherwise acted in bad faith.   That point alone is enough to conclude that demand was not excused.  *See, e.g.*, *id.* at 672-73 (applying § 102(b)(7); dismissing where complaint's allegations "may imply negligence, but [plaintiff] must meet the higher standard of bad faith").

Furthermore, "the mere threat of personal liability . . . standing alone, is insufficient to challenge . . . [the] disinterestedness of directors."  *Rales*, 634 A.2d at 936 (internal quotations omitted).   If it were, then the demand requirement would be meaningless, as demand would be excused any time a complaint named a majority of the board as defendants.  *See Aronson*, 473 A.2d at 818 (that interpretation of the demand requirement would "effectively abrogate Rule 23.1 and weaken the managerial power of directors").   Rather, to find a director's "ability to consider a demand impartially is compromised," there must be particularized allegations showing "a '***substantial likelihood***' of personal liability" for a non-exculpated claim.  *Guttman*, 823 A.2d at 501 (citing *Rales*, 634 A.2d at 936) (emphasis added).   In other words, what is needed here are *particularized factual allegations* showing a *substantial likelihood* that *at least five directors* will be found to have acted *in bad faith*.   This Complaint, with its conclusory allegations, does not begin to make any of those showings.[17]

---

[17] *See, e.g.*, *Lear*, 967 A.2d at 641 (dismissing complaint that "does not even create an inference of mere negligence or gross negligence, . . . certainly does not satisfy the far more difficult task of stating a non-exculpated duty of loyalty claim") (applying § 102(b)(7) provision).

       1.      **Conclusory Allegations Of Wrongdoing Do Not Demonstrate Demand Futility.**

Plaintiffs' primary contention is that demand is excused because the Proxy did not contain the Post-Signing Projections—that is, projections prepared after the merger agreement was signed, the fairness opinion was rendered, and the board made its recommendation. (¶¶ 90-91.) But the Complaint never alleges that the board even was aware of those projections; it never specifies that they were presented to, reviewed by, or approved by the directors, and it alleges nothing about any decision the board ever made with respect to those projections. The same is true of the allegations relating to the CCT situation. The Complaint says nothing about what the board considered, discussed, read, or was told about the CCT situation at any point in time. Nor does it "allege specific facts 'that reasonably suggest sufficient board involvement in the preparation of the disclosures'" in the Proxy to show bad faith. *Dow*, 2010 Del. Ch. LEXIS 2, at *39 (citation omitted). *See also Guttman*, 823 A.2d at 498 (dismissing complaint that was "devoid of any pleading regarding the full board's involvement in the preparation and approval of the company's financial statements"). Without those allegations, the Complaint cannot show that any director, let alone five or more, is substantially likely to be held personally liable.

Instead, the Complaint says only that the directors, "because of their positions with Cooper," supposedly knew and "had access to adverse, nonpublic, material information about the financial condition and operations of Cooper." (¶ 44.) Boilerplate recitations of that sort fail to plead with particularity what information the directors knew and how they acquired that knowledge. *E.g.*, *Rattner*, 2003 Del. Ch. LEXIS 103, at *34 n.53 ("conclusory" allegations that "charge[] directors, solely upon the basis of their status as directors, with knowledge of alleged corporate activity" fail to excuse demand). The Complaint's allegations that the directors approved the Proxy or authorized its issuance (¶¶ 89-90) fare no better. "Pleading that the

director defendants 'caused' or 'caused or allowed' the Company to issue certain statements is not sufficient particularized pleading to excuse demand under Rule 23.1." *Citigroup*, 964 A.2d at 133 n.88.  Courts recognize that the "decision to disseminate the proxy statement" does not "lead[] ineluctably to a finding that [directors] deliberately violated their disclosure obligations." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1288 & n.35 (Del. 1994).[18]

**2.      The Disclosure-Related Allegations Do Not Demonstrate Demand Futility.**

The Complaint fails to show that a majority of the directors are substantially likely to be personally liable for the alleged disclosure violations.  To begin with, plaintiffs have not even tried to plead transaction causation for the Section 14(a) claim.  (*See* ¶¶ 96-104.)[19]  And indeed they cannot, for the simple reason that there can be no transaction causation, and thus no Section 14(a) claim, because the "***deal was never consummated***."  *Rediker v. Geon Indus., Inc.*, 464 F. Supp. 73, 82 (S.D.N.Y. 1978) (emphasis added).  *See also Gen. Elec.*, 980 F.2d at 933 (the corporate action authorized by the proxy "did not create any cognizable harm because the shareholders' votes did not authorize the transactions that caused the losses").[20]

---

[18] The Complaint also alleges that the board's failure "to conduct proper supervision" "allowed the Company to fail to perform its covenants under the Merger Agreement, up to and including providing Apollo with the Company's third quarter 2013 financial results."  (¶¶ 89, 123.)  "[A] showing of bad faith is a necessary condition to director oversight liability," *Citigroup*, 964 A.2d at 123, and a bare allegation that the board "allowed" the Company to supposedly breach the merger agreement comes nowhere close to showing bad faith.

[19] "To prevail on the merits of a section 14(a) claim, a plaintiff must show that (1) the defendant made a material misrepresentation or omission in a proxy statement (2) with the requisite state of mind (3) that caused the plaintiff's injury and (4) the proxy solicitation was an essential link in the accomplishment of the transaction."  *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 511 (D. Del. 2001).  That fourth element—the transaction causation element—means that the Proxy "itself, rather than the particular defect in the solicitation materials, [must be] 'an essential link in the accomplishment of the transaction.'"  *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992) (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385 (1970)).

[20] *See also Heil v. LeBow*, No. 91 Civ. 8656, 1993 U.S. Dist. LEXIS 222, at *10 (S.D.N.Y. Jan.

Nor does the Complaint adequately allege loss causation. For there to be loss causation, the transaction that was caused by the allegedly misleading proxy statement must have directly resulted in a loss to the plaintiff (which for purposes of this derivative suit would be Cooper Tire).[21] Because the Proposed Transaction was never consummated, it could not have caused a loss to Cooper Tire. *See, e.g.*, *Heil*, 1993 U.S. Dist. LEXIS 222, at *10 ("Because the proposed 1990 Restructuring was not consummated, Plaintiff cannot show the fundamental requirement that the proxy solicitation caused him injury.") (dismissing § 14(a) claim).[22]

Moreover, a majority of the board is not substantially likely to be personally liable for the Proxy's disclosure—a statement of opinion—regarding the expected impact of the CCT issues on the consummation of the Proposed Transaction, because a statement of opinion can give rise to liability under Section 14(a) only if it both misstates the defendant's opinion *and* is false or misleading regarding the underlying subject matter it addresses. *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1091-96 (1991). *See also id.* at 1108-09 ("As I understand the Court's opinion, the statement 'In the opinion of the Directors, this is a high value for the shares' would produce liability if in fact it was not a high value and the directors knew that. It would not produce liability if in fact it was not a high value but the directors honestly believed otherwise.")

---

13, 1993) ("If no action was taken pursuant to the challenged proxy solicitation, then no section 14(a) claim can be stated because no injury could exist."). That the Cooper Tire stockholders approved the Proposed Transaction makes no difference; that is "insufficient to satisfy the corporate action requirement of Section 14(a)." *Rediker*, 464 F. Supp. at 82 n.14.

[21] *See, e.g.*, *Britton v. Parker*, No. 06-cv-01797, 2009 U.S. Dist. LEXIS 87829, at *39 (D. Colo. Sept. 23, 2009) ("[I]f the corporate actions approved by those fraudulently-obtained votes do not result in harm to the shareholders, there is no liability under § 14(a).").

[22] The absence of allegations of causation likewise is fatal to any disclosure claim under Delaware law. *See, e.g.*, *In re Wayport, Inc. Litig.*, 76 A.3d 296, 315 (Del. Ch. 2013) (a disclosure claim for damages requires "proof of . . . damages proximately caused by that failure.") (citing *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 146-47 (Del. 1997)).

(Scalia, J., concurring in part and concurring in the judgment).

The Complaint simply asserts—with the benefit of 20/20 hindsight—that the board knew that the CCT issue "imperiled" the Proposed Transaction (¶ 62), yet still approved the statement that the CCT issues were not "expected to have an effect on the consummation of the merger" (Proxy at 62).[23]  But the Complaint alleges no particularized facts demonstrating that the board knew or believed otherwise.  It says nothing about what the board discussed, read, or was told about the CCT situation at any point in time.  It never specifies who advised the board about the CCT situation, or the substance of any such advice.  And it completely ignores the language in the merger agreement carving out labor unrest of the sort experienced at CCT as a "Material Adverse Effect."  (*See id.* at A-57.)  That language, however—which specifically provided that Apollo would be required to close the deal, even upon the occurrence of an event like the CCT situation—is why the Company did not expect the CCT issue to impact the deal.  (Indeed, Apollo itself publicly stated that it did not believe the CCT unrest would prevent a closing.  *See supra* at 5.)  Because the Complaint never shows that the directors "honestly believed" anything other than what the Proxy said—that the CCT situation was not expected to prevent the closing of the deal—it cannot show that a majority of the board is substantially likely to be personally liable.[24]

Finally, the Complaint fails to show that the Post-Signing Projections were material, which is an essential element of both a Section 14(a) claim and any disclosure-based fiduciary-duty claim.[25]  The Complaint never alleges that those projections would have been viewed by a

---

[23] "Corporate officials need not be clairvoyant," *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000), but plaintiffs try to hold the board liable here for a failure to accurately predict the future.

[24] The Complaint also ignores that, when the Company stated that the CCT situation was not expected to have an effect on the closing of the deal (Proxy at 62), it explicitly cautioned that "[w]e cannot assure you that any of our expectations . . . will be achieved" (*id.* at 13).

[25] *See, e.g.*, *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1173 (Del. 2000) ("To state a disclosure

"reasonable [Cooper Tire] investor as having *significantly* altered the 'total mix' of information" for that stockholder in deciding how to vote on the Proposed Transaction. *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).  Disclosure of the Post-Signing Projections (which allegedly were less optimistic than those disclosed in the Proxy) "would not have made a reasonable [Cooper Tire] shareholder less likely to approve the merger." *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp 2d 1248, 1261 (N.D. Cal. 2000).  Just the opposite is true.  Accordingly, "[t]here is simply not a substantial likelihood that a reasonable investor would have difficulty deciding which course of action to take.  The misstatements were therefore immaterial." *Id.*[26]

At its core, plaintiffs' gripe is that the Post-Signing Projections show that the Proposed Transaction would have been an even better deal for the stockholders than the board originally thought.  "Put even less sympathetically, such a lawsuit would be premised in [the Company's] failure to tell the [Cooper Tire] shareholders that they were getting too good a deal in the merger." *McKesson*, 126 F. Supp. 2d at 1261.

### D.      Other Boilerplate Allegations Do Not Establish Demand Futility.

The Complaint trots out a number of other allegations that courts routinely reject in dismissing derivative complaints for lack of demand.  These need not detain the Court long.

---

claim, [plaintiff] 'must provide some basis for a court to infer that the alleged violations were material'") (internal citation omitted); *Swanson v. Weil*, No. 11-cv-02142, 2012 U.S. Dist. LEXIS 138182, at *28 (D. Colo. Sept. 26, 2012) ("Whether pleaded as a breach of fiduciary duty or a violation of Section 14(a) . . . Plaintiff must plead a material misstatement or omission.").

[26] *See also In re Vitalink Commc'ns Corp. S'holders Litig.*, No. 12085, 1991 Del. Ch. LEXIS 195, at *40 (Del. Ch. Nov. 8, 1991) (nondisclosure of financial analysis proper "because the analysis was not material"; disclosure would "act as a mere affirmance to the shareholders of the Board's message that this was a very good deal")), *aff'd sub nom. Grimes v. John P. McCarthy Profit Sharing Plan*, 610 A.2d 725 (Del. 1992); *McKesson*, 126 F. Supp. 2d at 1261 n.2 (the "only relevant inquiry" is how the stockholders "would have voted if armed with the true facts").

First, that the board has not already filed suit "to recover for Cooper" (¶ 94) does not divest the board of its authority to manage the Company's legal affairs. *Richardson v. Graves*, No. 6617, 1983 Del. Ch. LEXIS 466, at *9 (Del. Ch. June 17, 1983). Likewise, the allegation that the board would have to assert a corporate claim "against themselves or others" (¶ 93) has been "repeatedly rejected by Delaware courts." *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 179 (D. Del. 2009) (collecting cases).

Similarly, that the directors are compensated for their service on the board (¶¶ 29, 31-38) fails to establish that the directors have a disabling financial interest. *E.g.*, *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled in part on other grounds by Brehm*, 746 A.2d 244.

Finally, that four directors—a minority of the board—served on the audit committee (¶ 91) does not excuse demand because, "[a]s numerous Delaware decisions make clear, an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem for purposes of Rule 23.1." *South*, 62 A.3d at 17 (citations omitted). In lieu of particularized facts, the Complaint merely offers the audit committee charter (¶ 47), and alleges that its members were tasked with "reviewing and approving" the Proxy (¶ 91). That is insufficient. "The existence of the [Audit] Committee and the scope of its charter are not sufficient to establish the necessary connection" to plead demand futility. *South*, 62 A.3d at 17.

## CONCLUSION

The Court should stay this action in light of the parallel securities action. If this action is not stayed, the Court should dismiss the Complaint under Rule 23.1, because plaintiffs failed without valid excuse to make a pre-suit demand on Cooper Tire's board of directors.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Geoffrey J. Ritts
Adrienne Ferraro Mueller
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Tel:  (216) 586-3939

By:    */s/ John A. Sensing*
      Stephen C. Norman (Del. Bar No. 2686)
      John A. Sensing (Del. Bar No. 5232)
      Hercules Plaza, Sixth Floor
      1313 North Market Street
      P.O. Box 951
      Wilmington, Delaware  19899-0951
      Tel:  (302) 984-6178

Marjorie P. Duffy
Jones Day
325 John H. McConnell Blvd., Suite 600
P.O. Box 165017
Columbus, Ohio  43216-5017
Tel:  (614) 469-3939

*Attorneys for Individual Defendants Roy V. Armes, Bradley Hughes, Thomas P. Capo, Steven M. Chapman, John J. Holland, John F. Meier, Cynthia A. Niekamp, John H. Shuey, Richard L. Wambold, and Robert D. Welding*

PEPPER HAMILTON LLP

By:    */s/ M. Duncan Grant*
      M. Duncan Grant (Del. Bar No. 2994)
      James H.S. Levine (Del. Bar No. 5355)
      Hercules Plaza, Suite 5100
      1313 North Market Street
      P.O. Box 1709
      Wilmington, Delaware  19899-1709
      Tel:  (302) 777-6500

Dated:  October 8, 2014

*Attorneys for Nominal Defendant Cooper Tire & Rubber Company*

[1168406 / 40588-002]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**<u>CERTIFICATE OF SERVICE</u>**

I, John A. Sensing, hereby certify that on October 8, 2014, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

By:   */s/ John A. Sensing*

John A. Sensing (#5232)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware  19899-0951
(302) 984-6000
jsensing@potteranderson.com

[1168193 / 40588-002]